**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **KIMBERLY COLEMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 4:20-CV-411-SNLJ** |
| | ) |
| **KILOLO KIJAKAZI,** [1] | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Kimberly Coleman applied for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI.  Her applications were denied, and she appealed the denials to an administrative law judge ("ALJ").  After a hearing, the ALJ found plaintiff was not disabled, and plaintiff now seeks judicial review [#20]. The defendant filed a response brief, but no reply was filed, and the time for doing so has now expired.

As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

## I.    Background

Plaintiff Coleman was born in 1972 and was 43 years old when she alleges she became disabled on March 12, 2015.  She alleges disability due to congestive heart failure, anemia, high blood pressure, asthma, hyperthyroidism, and nodules on her lungs. Further relevant background will be discussed as appropriate below.

On March 27, 2019, the ALJ issued her opinion.  The ALJ's decision recognized that plaintiff had the severe impairments congestive heart failure, degenerative disc disease, hypertension, asthma, hyperthyroidism, and anemia.  The ALJ stated that she found plaintiff's impairments could be expected to cause the alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" [Tr. 17.]  Plaintiff appeals.

## II.    Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

2

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv),

3

416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§

4

404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.    The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments:  congestive heart failure, degenerative disc disease, hypertension, asthma, hyperthyroidism, and anemia.  At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC.  The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) and 416.967(b) except she never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs.  She can occasionally stoop and crouch.  The claimant must avoid concentrated exposure to extreme cold, humidity, pulmonary irritants (such as gases and fumes), and hazards (such as moving mechanical parts and unprotected heights).

[Tr. 61.]

5

For "expedited processing," the ALJ did not make a finding regarding whether plaintiff could perform her past relevant work.  With the help of a vocational expert who testified at the hearing, the ALJ determined that plaintiff could perform the jobs of mail clerk, order caller, and photo copying-machine operator, which all exist in significant numbers in the national economy, and thus plaintiff is not disabled.

## IV.    Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

6

## V.      Discussion

Plaintiff argues that her case should be remanded because the ALJ failed to properly evaluate her RFC.  Plaintiff argues first that the RFC assessment fails to properly account for plaintiff's limitations in sitting, standing, walking, and concentration secondary to spinal stenosis, multi-level degenerative disk disease, spondylosis, radiculopathy, and pain.

In particular, plaintiff contends that the ALJ inconsistently applied the medical opinion of Dr. Mel Moore.   Dr. Moore is a State agency physician who reviewed plaintiff's file and concluded that she remained capable of light work, with additional postural and environmental limitations [Tr. 20, 62-65].  Because Dr. Moore's opinion was "supported by and largely consistent with the totality of the objective medical evidence," the ALJ gave it great weight. [Tr. 20.]  Plaintiff points out that Dr. Moore opined that plaintiff's alleged symptoms were "fully consistent" with the evidence and that her self-reported activities of daily living limitations were "fully consistent w/impairments." [Tr. 62, 65.]  Thus, plaintiff says, if Dr. Moore believes plaintiff cannot sustain her activities of daily living, then she is necessarily unable to work eight hours a day, five days a week.  Plaintiff points Dr. Moore's report is also inconsistent in that, if he believes plaintiff's statements that she can only sit or stand for 15 minutes at a time, then she could only sit for four hours in a work day and stand for four hours in a workday.  That is, plaintiff says, mathematically inconsistent with Dr. Moore's statement that plaintiff can stand/walk for six hours and sit for six hours in an eight-hour workday.

However, plaintiff fails to acknowledge that Dr. Moore's opinion, when read in its entirety, indicates his conclusion that plaintiff was in fact able to perform light work, with some postural and environmental limitations.  [Tr. 62-65.]  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for up to six hours apiece in a regular workday; occasionally balance, stoops, crouch, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme cold and humidity, workplace hazards, and factors that might impede proper ventilation.  [Tr. 63-64.]  Those findings were largely adopted by the ALJ in her RFC determination.  [Tr. 16.]

With respect to plaintiff's stated sitting/standing restrictions, even though the ALJ did not include a sit/stand option in the RFC, such a limitation would not be dispositive because the vocational expert testified that that the jobs identified at the hearing would remain available even if such a restriction were added.  [Tr. 51-52.]

Although plaintiff is correct that Dr. Moore's report was imperfectly written, the fact that Dr. Moore found that plaintiff's medical conditions could indeed cause the symptoms she experienced does not necessarily mean the symptoms were so bad that plaintiff was unable to work.  The ALJ gave great weight to Dr. Moore's opinion and adopted many of his stated restrictions, but Dr. Moore's opinion stopped well short of saying plaintiff could not work at all.  The ALJ ably explained her conclusion that plaintiff's conditions, though they could be expected to cause some of her stated symptoms, did not cause total disability as alleged by plaintiff.

8

Indeed, a great deal of objective evidence raised significant questions as to the consistency of plaintiff's claims. *See, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017) (ALJ must consider "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence"); 20 C.F.R. §§ 404.1529(a), 416.929(a) (requiring "medical signs and laboratory findings" to corroborate a claimant's allegations).  For example, in August 2015, plaintiff told her chiropractor that her pain had decreased after just one visit, and stated that she was pleased with those results. [Tr. 18, 351.]  Notes from March and September 2016 established that plaintiff's anemia and hypertension were each stabilized by proper treatment (Tr. 18, 511, 522).  And in January 2017, when plaintiff began receiving steroid injections to address lumbar pain, her symptoms resolved within 30 seconds, leaving her with normal range of motion.  [Tr. 19, 588-89.]  To the extent a claimant's conditions are stable and controlled by treatment, those impairments are not disabling.  *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015); *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv) (agency will consider claimant's medication and treatment).

In addition, the record shows plaintiff was serially non-compliant with her providers' suggestions.  [Tr. 18-20.]  When plaintiff's blood pressure was elevated in October 2015, plaintiff admitted she had not been taking her antihypertensive medications as directed.  [Tr. 18, 409-10.]  Plaintiff complained of shortness of breath the next spring, but that was after having been off her medications for a whole month.  [Tr. 18, 460.]  Her thyroid function was also uncontrolled due to repeated noncompliance.

9

[Tr. 19, 470, 569.][2]  At least one treatment note made this issue explicit, stating that medication compliance "seems to be a concern in this patient." [Tr. 20, 670.]  An ALJ may consider a claimant's noncompliance, even when compliance alone would not remove all of her symptoms.  *Wildman v. Astrue*, 596 F.3d 959, 965 n.3 (8th Cir. 2010).  Despite plaintiff's allegations of disabling congestive heart failure, hypertension, shortness of breath, asthma, and nodules on her lungs, plaintiff testified she continued to smoke cigarettes.  [Tr. 15, 33, 35, 257, 307.]

Numerous other inconsistencies led the ALJ to further discount the reliability of plaintiff's subjective statements [Tr. 17-20].  In her Function Report and hearing testimony, plaintiff alleged extreme limitations, including that she could sit or stand for only 15 minutes at a time [Tr. 283], walk for only 10-20 feet without rest [Tr. 288], and lift only 10 pounds [Tr. 42].  When asked about her energy level, plaintiff testified that she had "none at all" [Tr. 45].  Yet, she indicated that she went shopping with her home-care worker, for up to two hours at a time [Tr. 18, 286].  Plaintiff admitted that she used Facebook, talked on the phone, and played cards "almost daily," yet also alleged that her impairments left her unable to even hold a conversation [Tr. 18, 284, 287].  She further claimed that she had to call for assistance from her home-care worker in order to use the restroom each morning when she awoke for the day, and that she "never" prepared any food or meals for herself [Tr. 18, 284-85].  This level of incapacity conflicted with

---

[2] Plaintiff suggests that she "was compliant with all treatment and medications except some thyroid medications, which had no effect on [her] low back and sciatic pain."  [#20 at 11.]  That statement is not supported by the record.

plaintiff's testimony that she lived alone, that her home-care worker was present for just four hours each day, and that her medication required her to use the restroom every 30-45 minutes "all day long" [Tr. 34-35, 48]. Where, as here, it appears a claimant is overemphasizing or exaggerating symptoms, an ALJ may discount her subjective claims. *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013).

The record includes other notable contradictions. For example, the ALJ observed that plaintiff simultaneously claimed that her back pain waxed and waned, and that it was "the same all the time" [Tr. 19, 629]. As recently as May 2018, plaintiff reported that she first experienced chronic back pain after a motor-vehicle accident in January 2016, which contradicts her claim of lower-back pain that began after a fall in September 2012 [Tr. 20, 359, 650]. She testified to limited range of motion in her neck, but her counsel confirmed that the record has no evidence of cervical impairment [Tr. 43]. Plaintiff also asserted that oral medication and rest were the only things that helped her pain, despite evidence of the immediate relief she received from steroid injections [Tr. 19, 42, 588-89].

In May 2015, plaintiff's provider expressed concerns about her illicit drug use, as she tested positive for THC and/or cocaine at least three different times that year [Tr. 370, 348, 356, 364]. She admitted to ongoing marijuana use in 2016 [Tr. 463, 465, 467]. Then, in January 2017, plaintiff denied any history of smoking or drug use of any kind [Tr. 591, 722]. This evidence shows a pattern of inaccuracy or unreliability on plaintiff's part. *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (ALJ may disbelieve claimant's subjective reports due to "inherent inconsistencies or other circumstances" in the record).

11

Finally, although the ALJ found plaintiff did not earn enough to meet the standard for substantial gainful activity during the relevant period, evidence that she worked during the relevant period (including some time as a self-employed home-health contractor in June 2017) also demonstrated her limitations were less severe than alleged. [Tr. 15-16, 36-37, 49, 213-16, 236-43.]  This was another significant factor in finding plaintiff's allegations less than fully consistent.  *See, e.g.*, *Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (among other factors, claimant worked 10 hours per week in a catering business); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (not unreasonable for ALJ to note that claimant's part-time work was inconsistent with claims of disabling pain); 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

An ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'"  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  Further, "the credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016).  Here, the ALJ supported her finding that plaintiff's subjective reports were less than fully consistent, and plaintiff makes no compelling argument to the contrary.

The ALJ thus provided ample discussion for why the record did not support plaintiff's subjective allegations of total disability.  Even though the ALJ relied on Dr. Moore's opinion (and, notably, plaintiff's own doctors did not provide their own relevant

RFC source statements), "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Here, the ALJ acted within her discretion to resolve conflicts in the record, she gave good reasons for the functional limitations she found, and the record does not warrant assignment of any greater limitations [Tr. 15-20].  To the extent any error exists here, this Court must consider whether the error is harmless by using "case-specific application of judgment, based upon examination of the record." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).  *See also Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) ("We will not set aside an administrative finding based on an 'arguable deficiency in opinion-writing technique' when it is unlikely it affected the outcome.") (quoting *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)); *Lubinski v. Sullivan*, 952 F.2d 214, 216 (8th Cir. 1991) (an error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse).  Here, where substantial evidence easily supports the ALJ's decision, plaintiff has failed to identify any such determinative error.

Plaintiff peppers her brief with citations to support her pain and other alleged symptoms [*e.g.*, #20 at 6-7].  Ultimately it is not this Court's prerogative to second-guess the ALJ or reweigh the evidence for itself. If it is possible "to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings," this Court is obligated to affirm the Commissioner's decision. *Gann v. Berryhill*, 864 F.3d 947, 950-951 (8th Cir. 2017). In sum, this Court must satisfy itself only that the ALJ's decision lies with the permissible "zone of choice"—that is to say, that the ALJ's decision lies within the parameters of discretion given to him or her by

13

Section 405(g). *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006); 28 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

## VI.    Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [#1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.


Dated this 21st day of September, 2021.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

14